42 P.3d 1265 (2002)
146 Wash.2d 29
INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 46, an unincorporated voluntary association, Curt Rider and Tim Key, Respondents,
v.
CITY OF EVERETT, a municipal corporation, Petitioner.
No. 70344-2.
Supreme Court of Washington, En Banc.
Argued October 16, 2001.
Decided March 28, 2002.
*1266 Charles Eberhardt, Paul Smith, Bellevue, Mark Soine, Everett, for Appellant.
Janet K. May, Des Moines, Amicus Curiae.
James Webster, Lynn Weir, Seattle, for Respondent.
BRIDGE, J.
The City of Everett seeks reversal of a decision by the Court of Appeals, Division One, awarding attorney fees pursuant to RCW 49.48.030 to the International Association of Fire Fighters, Local 46, for a successful grievance arbitration action on behalf of union members Curt Rider and Tim Key. We hold that RCW 49.48.030 provides for an award of attorney fees to a labor union that successfully recovers wages or salaries owed to its employee members in a labor arbitration proceeding.

FACTS AND PROCEDURAL HISTORY
The relevant facts are undisputed. In June 1997, the City of Everett (City) suspended Rider and Key from their employment without pay for a 24 hour shift for willfully tampering with and damaging the electrical system at the fire station where they were assigned. The International Association of Fire Fighters, Local 46 (Local 46), on behalf of Rider and Key, brought a grievance proceeding against the City, arguing that the suspensions violated the collective bargaining agreement (CBA) between the City and Local 46.[1]
Pursuant to the grievance procedure in the CBA, Local 46 and the City submitted the dispute to arbitration. During the two day arbitration proceeding, Local 46 was represented by counsel. Neither Rider nor Key retained separate counsel. The arbitrator ruled that the City had violated the CBA by suspending Rider and Key without pay and ordered the City to set aside the suspensions and to award back pay. The City complied with the arbitrator's order.
Following the arbitration proceeding, Local 46 requested the City to pay the attorney fees incurred from challenging the suspensions. The City refused. Local 46, Rider, and Key then filed a complaint against the City in Snohomish County Superior Court seeking recovery of the attorney fees. Both sides moved for summary judgment. The trial court denied Local 46's motion and granted the City's. Local 46, Rider, and Key appealed.[2]
The Court of Appeals, Division One, held that Local 46 was entitled to attorney fees pursuant to RCW 49.48.030, which provides for attorney fees to any person who successfully recovers wages or salary owed for bringing a successful grievance arbitration on behalf of Rider and Key.[3] The court examined whether the term "any person" in RCW 49.48.030 included unions. Id. The court found the term ambiguous because the statute does not require that an employee initiate the action and, at the time the statute was amended, it was common practice for collective bargaining agreements to provide that unions bring grievances to arbitration on behalf of their members.[4] Thus, the court concluded, the Legislature must have intended that unions could recover attorney fees under RCW 49.48.030.[5] It also found that this position was consistent with the determination that "RCW 49.48.030 is a remedial statute that should be liberally construed to effect its purpose."[6]
The court reversed and remanded the case for calculation of attorney fees for the arbitration and all superior and appellate court *1267 proceedings.[7] We granted the City's petition for review.

ANALYSIS
RCW 49.48.030 was first enacted in 1888 and took its current form in 1971. It states:
In any action in which any person is successful in recovering judgment for wages or salary owed to him, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer: PROVIDED, HOWEVER, That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary.
RCW 49.48.030.
The City argues that the Court of Appeals decision conflicts with this court's holding that courts must enforce the plain meaning of unambiguous statutes. The plain meaning rule requires courts to derive the meaning of the statute from the "wording of the statute itself." Rozner v. City of Bellevue, 116 Wash.2d 342, 347, 804 P.2d 24 (1991). Only if the statute is determined to be ambiguous, will a court look to the legislative intent in enacting it. State v. Thorne, 129 Wash.2d 736, 762, 921 P.2d 514 (1996). However, the City seems to ignore the remedial nature of RCW 49.48.030 and the rules of construction that Washington courts have attached to it.
RCW 49.48.030 is a remedial statute, which should be construed liberally to effectuate its purpose. See Gaglidari v. Denny's Rests., Inc., 117 Wash.2d 426, 450-51, 815 P.2d 1362 (1991) (recognizing statute's remedial nature and liberal construction requirement); Naches Valley Sch. Dist. No. JT3 v. Cruzen, 54 Wash.App. 388, 399, 775 P.2d 960 (1989). A liberal construction requires that the coverage of the statute's provisions "`be liberally construed [in favor of the employee] and that its exceptions be narrowly confined.'" Peninsula Sch. Dist. No. 401 v. Pub. Sch. Employees, 130 Wash.2d 401, 407, 924 P.2d 13 (1996) (interpreting chapter 41.56 RCW) (quoting Nucleonics Alliance, Local Union 1-369 v. Wash. Pub. Power Supply Sys., 101 Wash.2d 24, 29, 677 P.2d 108 (1984)).
"When interpreting statutory language, the goal of the court is to carry out the intent of the Legislature." Ellerman v. Centerpoint Prepress, Inc., 143 Wash.2d 514, 519, 22 P.3d 795 (2001) (citing Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wash.2d 1, 6, 721 P.2d 1 (1986)). "In ascertaining this intent, the language at issue must be evaluated in the context of the entire statute." Id.
We have previously recognized Washington's "long and proud history of being a pioneer in the protection of employee rights." Drinkwitz v. Alliant Techsystems, Inc., 140 Wash.2d 291, 300, 996 P.2d 582 (2000). The Legislature "evidenced a strong policy in favor of payment of wages due employees by enacting a comprehensive [statutory] scheme to ensure payments of wages." Schilling v. Radio Holdings, Inc., 136 Wash.2d 152, 157, 961 P.2d 371 (1998) (referencing RCW 49.48.030). "[A]ttorney fees are authorized under the remedial statutes to provide incentives for aggrieved employees to assert their statutory rights." Hume v. Am. Disposal Co., 124 Wash.2d 656, 673, 880 P.2d 988 (1994). Furthermore, remedial statutes "should be liberally construed to advance the Legislature's intent to protect employee wages and assure payment." Ellerman, 143 Wash.2d at 520, 22 P.3d 795. Therefore, the terms of RCW 49.48.030 must be interpreted to effectuate this purpose.
In light of the liberal construction doctrine, Washington courts have interpreted RCW 49.48.030 broadly. Attorney fees are recoverable under RCW 49.48.030 for breach of an employment contract, Gaglidari, 117 Wash.2d at 450, 815 P.2d 1362; Kohn v. Georgia-Pacific Corp., 69 Wash.App. 709, 727, 850 P.2d 517 (1993) and more specifically, for the breach of a labor contract, Naches Valley, 54 Wash.App. at 399, 775 P.2d 960. The term "wages or salary owed" in RCW 49.48.030 has been construed to include back pay, Gaglidari, 117 Wash.2d at 449-50, 815 P.2d 1362; front pay, Hayes v. Trulock, 51 *1268 Wash.App. 795, 806, 755 P.2d 830 (1988); reimbursement for sick leave, Naches Valley, 54 Wash.App. at 398, 775 P.2d 960; and commissions, Dautel v. Heritage Home Center, Inc., 89 Wash.App. 148, 151-53, 948 P.2d 397 (1997).
Furthermore, we have held that an award of attorney fees to employees who successfully recover wages or salary owed should not be reduced by the amount contributed to the employees by their union. Hume, 124 Wash.2d at 673, 880 P.2d 988 (awarding attorney fees under RCW 49.48.030). In Hume, we stated that "because attorney fees are authorized under the remedial statutes to provide incentives for aggrieved employees to assert their statutory rights, it would be counterproductive to reduce attorney fee awards based on union support." Id.

Definition of "Action"
The Court of Appeals relied on Hitter v. Bellevue School District No. 405, 66 Wash. App. 391, 399, 832 P.2d 130 (1992) in concluding that "[t]here is no question that the arbitration was an `action' and the arbitrator's ruling was a `judgment' under RCW 49.48.030." Fire Fighters, 101 Wash.App. at 746 n. 4, 6 P.3d 50.[8] In Hitter, the plaintiff union member successfully challenged a disciplinary action as a violation of his collective bargaining agreement and was entitled to back pay. Hitter, 66 Wash.App. at 394-95, 832 P.2d 130. Although the Hitter court held that RCW 49.48.030 applied to arbitration proceedings, it found that the plaintiff had waived his right to attorney fees through his collective bargaining agreement, which expressly stated that each side would pay his own fees. Id. at 397, 832 P.2d 130.
Now, for the first time, the City asserts that the term "action" in RCW 49.48.030 does not include arbitration proceedings.[9] Specifically, the City argues that the decision below and Hitter are in conflict with Thorgaard Plumbing & Heating Co. v. King County, 71 Wash.2d 126, 426 P.2d 828 (1967) and the common law definition of "action."
This court will generally decline to decide issues that were not raised below. State v. Clark, 124 Wash.2d 90, 104-05, 875 P.2d 613 (1994); RAP 2.5(a). The reasons for this rule are well settled: (1) to ensure that "an appellant `ha[s] an opportunity to elect to stand on his theory or apply to the court to amend his theory and present some other one';" and (2) to "encourage parties to raise issues before the Court of Appeals, thereby ensuring the `benefit of developed arguments on both sides and lower court opinions squarely addressing the questions'." Id. at 105, 875 P.2d 613 (alteration in original) (quoting Peoples Nat'l Bank of Wash. v. Peterson, 82 Wash.2d 822, 830, 514 P.2d 159 (1973) and Yee v. Escondido, 503 U.S. 519, 112 S.Ct. 1522, 1534, 118 L.Ed.2d 153 (1992)). However, because this is an issue of public importance and in the interest of judicial *1269 economy, we will address it. Harris v. Dep't of Labor & Indus., 120 Wash.2d 461, 468, 843 P.2d 1056 (1993) (court has discretion to consider issues not raised at trial court); Marshall v. Higginson, 62 Wash.App. 212, 216 n. 3, 813 P.2d 1275 (1991) (court has discretion to address important public policy issues, whether or not they were raised below).
This court has characterized arbitration as judicial and as nonjudicial. Grays Harbor County v. Williamson, 96 Wash.2d 147, 152, 634 P.2d 296 (1981). In determining whether an arbitration is an exercise of a judicial function, we have noted that "[a]rbitration has been viewed as both nonjudicial or the exercise of a judicial function depending upon the context of the question." Id. at 152, 634 P.2d 296. For example, in the context of due process, arbitration must meet the same requirements as a traditional judicial action. Id. at 152-53, 634 P.2d 296. But when dealing with the nature of arbitration itself, "it has been deemed a substitute for judicial action." Id. at 153, 634 P.2d 296 (citing Thorgaard, 71 Wash.2d at 131-32, 426 P.2d 828). We have also stated that "`[a]rbitrators, when acting under the broad authority granted them by both the agreement of the parties and the statutes, become the judges of both the law and the facts.'" Boyd v. Davis, 127 Wash.2d 256, 263, 897 P.2d 1239 (1995) (quoting N. State Constr. Co. v. Banchero, 63 Wash.2d 245, 249-50, 386 P.2d 625 (1963) (per curiam)). See also Tombs v. N.W. Airlines, Inc., 83 Wash.2d 157, 161-62, 516 P.2d 1028 (1973); N. State Constr. Co., 63 Wash.2d at 248, 386 P.2d 625 ("arbitration is in the nature of a judicial inquiry" but "the standards of judicial conduct and efficiency to which a panel of arbitrators will be held are markedly different from those resting by law and tradition upon judicial officers").
In Thorgaard, this court examined whether the former county nonclaim statute, RCW 36.45.010 and .030, which required a party to file a claim with the board of county commissioners before an action for damages could be sought, also required a party to file a claim before submitting the dispute to arbitration pursuant to the parties' contract and chapter 7.04 RCW. 71 Wash.2d at 129-30, 426 P.2d 828. After considering the differences between bringing an action and submitting a case to arbitration as well as the specific purposes of both RCW 36.45.010 and chapter 7.04 RCW, the Thorgaard court held that an arbitration proceeding was not included in the definition of "action" as used in RCW 36.45.030. Thorgaard, 71 Wash.2d at 130-31, 426 P.2d 828. The court stated that "[t]he very purpose of arbitration is to avoid the courts insofar as the resolution of the dispute is concerned.... It is a substitute forum designed to reach settlement of controversies, by extrajudicial means, before they reach the stage of an action in court." Id. at 131, 426 P.2d 828. However, the court also indicated that it was construing the language RCW 36.45.010 and RCW 7.04.030 in making this determination. Id. at 130-31, 426 P.2d 828 (stating that "[i]t is clear that by using the word `action' in [RCW 36.45.010] the legislature had a lawsuit in mind" and "RCW 7.04.030 makes it clear that there is a difference between an action and an arbitration proceeding").
Although the City admits that labor arbitration is not subject to chapter 7.04 RCW, Clark County Public Utility District No. 1 v. Wilkinson, 139 Wash.2d 840, 846, 991 P.2d 1161 (2000), it argues that this court extended the Thorgaard rule to labor arbitration in Williamson. The City mistakes the holding of Williamson. In Williamson, the court examined whether a statutory writ of certiorari could be used to review a grievance arbitration award. Williamson, 96 Wash.2d at 151, 634 P.2d 296. Before a party may bring a writ of certiorari under RCW 7.16.040, the action: (a) must be "one of an `inferior tribunal, board or officer';" (b) must be an exercise of a judicial function; and (c) "there must be no other avenue of review or adequate remedy at law." Id. at 151-52, 634 P.2d 296. Because the court found that the county failed to show that the third requirement had been met, it declined to determine whether the arbitrator performed a judicial function. Id. See also Wilkinson, 139 Wash.2d at 847 n. 7, 991 P.2d 1161 (declining to decide whether labor arbitrator exercised judicial function for purpose of issuing statutory writ of review where parties agreed that statutory writ was unavailable). Therefore, *1270 whether labor grievance arbitration is judicial in nature is still an open question.
Local 46 argues that because this court has yet to determine whether arbitration is an "action" under RCW 49.48.030, it is improper to import the definition of "action" from Thorgaard because Thorgaard addressed completely different statutory schemes. Corrected Suppl. Br. of Resp't at 9. We agree. In Childers v. Childers, 89 Wash.2d 592, 575 P.2d 201 (1978), we held that "[l]legislative definitions generally control in construing the statutes in which they appear, but when the same word or phrase is used elsewhere the meaning depends on common usage and the context in which it is used, unaffected by the other statutory definitions." Id. at 598, 575 P.2d 201. See also State v. Edwards, 92 Wash.App. 156, 163-64, 961 P.2d 969 (1998) (refusing to adopt case law definition of "`extreme indifference to human life'" as it is used in first degree murder statute for homicide by abuse statute).
Because the statutory scheme at issue in Thorgaard serves a different purpose than the statutory scheme at issue here, we find that Thorgaard's definition of "action" does not control. In Thorgaard, the court was construing the apparent conflict between a nonclaim and the arbitration statute. Thorgaard, 71 Wash.2d at 130, 426 P.2d 828. The purpose behind the nonclaim statute is to put the county on notice of an impending action. See Hall v. Niemer, 97 Wash.2d 574, 583, 649 P.2d 98 (1982). However, because the parties' contract in Thorgaard provided for arbitration upon agreement by the parties, the county was already aware of the dispute. Thorgaard, 71 Wash.2d at 128, 426 P.2d 828. In contrast, this case involves employees' rights to ensure payment of wages or salary owed. See Schilling, 136 Wash.2d at 157, 961 P.2d 371.
The City also asserts that, under its plain meaning, "action" does not include "arbitration." Pet. for Review at 11. It asserts that because "action" is undefined in the statute, we must look to the common law definition. Id. (citing N. Pac. Ry. Co. v. Henneford, 9 Wash.2d 18, 21, 113 P.2d 545 (1941)). The City argues that at common law, "action" meant only actions in a court of justice. Id.
Although some definitions of "action" indicate that it is a proceeding in a court of law, others specify that it is merely a "judicial" proceeding. Black's Law Dictionary defines "action" as a "civil or criminal judicial proceeding," "an ordinary proceeding in a court of justice," and "any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree." BLACK'S LAW DICTIONARY 28-29 (7th ed.1999). American jurisprudence defines "action" as "a judicial proceeding in which one asserts a right or seeks redress for a wrong." 1 AM. JUR.2D Actions § 4, at 725-26 (1994). As discussed above, this court has held that "arbitration" may be judicial in nature depending on the circumstances. Boyd, 127 Wash.2d at 263, 897 P.2d 1239; Tombs, 83 Wash.2d at 161-62, 516 P.2d 1028; N. State Constr., 63 Wash.2d at 249, 386 P.2d 625. Thus, nothing in the "plain language" of "action" prevents us from interpreting it to include arbitration proceedings.
It is clear that had this case been brought in superior court, attorney fees would have been available. Because RCW 49.48.030 is a remedial statute, which must be construed to effectuate its purpose, we find no reason to not interpret "action" to include arbitration proceedings. A restrictive interpretation of "action" would preclude recovery of attorney fees in cases involving arbitration even though the employee is successful in recovering wages or salary owed. Thus, it would be inconsistent with the legislative policy in favor of payment of wages due employees. See Schilling, 136 Wash.2d at 157, 961 P.2d 371. Therefore, we hold that "action" as used in RCW 49.48.030 includes grievance arbitration proceedings in which wages or salary owed are recovered.

Same Action
The City next argues that even if arbitration is deemed an action, attorney fees are only recoverable under RCW 49.48.030 in the "same action" in which the employee *1271 recovers wages or salary owed.[10] Pet. for Review at 8-9. Thus, the City contends that the Court of Appeals erred in awarding attorney fees here because they were sought in a separate action from that in which wages were awarded. Id.
The City relies heavily on Hanson v. City of Tacoma, 105 Wash.2d 864, 719 P.2d 104 (1986). Id. The City asserts that the Hanson court's emphasis on "in any action" when discussing RCW 49.48.030 means in the "same action." Pet. for Review at 8-9. We disagree. The court's emphasis on "in any action" was in response to the defendant's argument in that case that the plaintiff should not recover attorney fees because his "wage claim was inconsistent with the grounds for certiorari." 105 Wash.2d at 872, 719 P.2d 104. Thus, in determining that an award of attorney fees was appropriate, the court sought to emphasize that the statute did not preclude an award of attorney fees based on the nature of the proceeding. Id.
The City also relies on Cohn v. Department of Corrections, 78 Wash.App. 63, 70-71, 895 P.2d 857 (1995). Pet. for Review at 9, 13-14. In Cohn, the plaintiff successfully challenged a decision by the Department of Corrections to discipline Cohn by reducing his pay by 10 percent for six months. 78 Wash.App. at 65, 895 P.2d 857. Cohn requested that the Personnel Appeals Board (Board) award attorney fees for the administrative action under RCW 49.48.030. Id. The Board refused concluding it had no authority to do so. Id. On appeal, the superior court similarly refused to award attorney fees. Id. The Court of Appeals affirmed. Id. at 71, 895 P.2d 857. It held that because the Board had no authority to award attorney fees, the superior court could not award attorney fees on appeal. Id. at 69-70, 895 P.2d 857. It further held that even if the superior court had authority to award such fees, it could still not award attorney fees because it had merely affirmed the Board's order that the superior court had not entered a "`judgment for wages or salary owed.'" Id. at 70, 895 P.2d 857. In so holding, the court distinguished Hanson by asserting that attorney fees were only allowed in Hanson because the award had been modified by the superior court. Id.
Because Cohn addressed an appeal from a government agency, not an arbitration proceeding, it is distinguishable.[11] In holding that the Board and the superior court had no authority to award attorney fees, Cohn was primarily relying on the statutory authority granted to the Board in chapter 41.64 RCW and Title 358 WAC. Id. at 67, 895 P.2d 857. These statutes and rules apply to proceedings before the Board and not to labor arbitration proceedings. In fact, the court in Cohn explicitly acknowledged Division One's extension of RCW 49.48.030 to arbitration proceedings, while still rejecting it in the context of the Board. Cohn, 78 Wash.App. at 65, 67 n. 5, 895 P.2d 857.
Furthermore, we disagree with Cohn's reading of Hanson. As discussed above, the Hanson court made it clear that the nature of the proceeding did not affect the availability of attorney fees to an employee who is successful in recovering wages or salary owed. Hanson, 105 Wash.2d at 872, 719 P.2d 104. Hanson's position is consistent with the liberal construction doctrine that RCW 49.48.030 is subject to. Reading Hanson as limiting the recovery of attorney fees to the same action in which "wages or salary owed" are awarded would also be inconsistent with awarding attorney fees on appeal pursuant to RCW 49.48.030. See Hanson, 105 Wash.2d at 873, 719 P.2d 104 (remanding case to trial court to determine reasonable attorney fees on appeal); Kohn, 69 Wash. App. at 727, 850 P.2d 517 (holding that employee may receive attorney fees for successfully defending an award of wages or salary on appeal).
*1272 The City also argues that the plain meaning of RCW 49.48.030 does not authorize a separate action for attorney fees. Pet. for Review at 12-13. The City comes to this conclusion by emphasizing the word "in" in the statute. Id. Thus it asserts that "`reasonable attorney's fees' are to be assessed `In' the action in which the employee recovers a `judgment for wages or salary owed.'" Id. The City's interpretation would seem to substitute "the same" for "any" in the statute. Thus, the statute would read "In the same action in which any person is successful in recovery judgment for wages or salary owed to him, reasonable attorney's fees ... shall be assessed." This restrictive interpretation is contrary to the liberal construction doctrine and Washington courts' holdings in other cases. See Gaglidari, 117 Wash.2d at 450-51, 815 P.2d 1362 (recognizing statute's remedial nature and liberal construction requirement); Hanson, 105 Wash.2d at 873, 719 P.2d 104 (awarding attorney fees on appeal); Kohn, 69 Wash.App. at 727, 850 P.2d 517 (awarding attorney fees on appeal). Rather, the statutory language would seem to only require that an employee receive wages or salary owed "in any action" in order to recover attorney fees. The attorney fees, however, need not be awarded in the same action as that in which wages or salary owed are recovered.
We therefore hold that RCW 49.48.030 does not require that for attorney fees to be awarded in any action, that action must be the "same action" in which wages or salary owed are recovered.

Definition of "Person"
The City next asserts that RCW 49.48.030 allows recovery of attorney fees only to a natural person and not a union. Suppl. Br. of Pet'r at 14-15. This was the primary challenge made by the City to the trial court and the Court of Appeals. First, the City argues that construing the chapter as a whole, it is clear that "person" could only mean a natural person because RCW 49.48.020 separates "person" from a "firm" or "corporation." Br. of Resp't (Court of Appeals) at 17. Thus, the City argues, if "person" is interpreted to include unions, it would render the use of the terms "firm" and "corporation" meaningless. Id. (citing City of Seattle v. State, 136 Wash.2d 693, 698, 965 P.2d 619 (1998)) ("[s]tatutes must be interpreted and construed so that all the language used is given effect").
However, the City fails to recognize that the term "person" as used in the two statutes refers to different entities. The terms "person," "firm," and "corporation" in RCW 49.48.020 describe various types of employers[12] not employees as the term "person" is used in RCW 49.48.030. Thus, the terms "firm" and "corporation" are not rendered superfluous by including "union" under the term "person" in RCW 49.48.030.
Furthermore, Local 46 was acting in a representative capacity when it brought the arbitration action on behalf of Rider and Key. Under the parties' CBA, Local 46 was the only party that could file a grievance for violations of the CBA. This is a common practice in labor contracts. It would be counterintuitive to limit the recovery of attorney fees to only those employees who bring an action on their own behalf when they would never be allowed to bring such an action independent of their union. Finally, we have previously held that an award of attorney fees to employees who successfully recover wages or salary owed should not be reduced by the amount contributed to the employees by their union. Hume, 124 Wash.2d at 673, 880 P.2d 988. We find no difference in awarding attorney fees to employees who then give the fees to their union, which supported the litigation and awarding the fees directly to the union.
Second, the City relies on the language in the statute, which states, "a `person ... successful in recovering wages or salary owed to him.'" Br. of Resp't (Court of Appeals) at 18-19. The City argues that because the wages were not owed to Local 46, it should not be entitled to attorney fees. Id. The City's position is unpersuasive in light of the liberal construction of RCW 49.48.030 and *1273 the nature of union representation of employees in grievance matters.
We agree with the Court of Appeals conclusion that where a union is the exclusive entity under its collective bargaining agreement entitled to bring an employment grievance, the statute should be construed to allow payment of attorney fees to a union because the union is acting as an agent for the employees in collecting wages owed. See Fire Fighters, 101 Wash.App. at 747, 6 P.3d 50. See, c.f., Dep't of Labor & Indus. v. Overnite Transp. Co., 67 Wash.App. 24, 39-40, 834 P.2d 638 (1992) (holding that Department of Labor and Industries was entitled to attorney fees under RCW 49.52.070 for successfully recovering overtime compensation for injured employees under Washington's Minimum Wage Act, chapter 49.46 RCW), review denied, 120 Wash.2d 1030, 847 P.2d 481 (1993). Because the union controls access to the grievance system, the purpose of the statuteto encourage employees to vindicate their rights to wagesis furthered by reimbursing unions for attorney fees they incur in bringing these actions. Permitting a union to recover attorney fees for bringing successful arbitration proceedings also furthers the union's ability to bring future wages claims on behalf of its members. Thus, we hold that the term "person" in RCW 49.48.030 necessarily includes unions that bring actions on behalf of their members.

City of Moses Lake
The City asserts that the Court of Appeals holding also conflicts with Division Three's holding in City of Moses Lake v. International Association of Firefighters, Local 2052, 68 Wash.App. 742, 847 P.2d 16, review denied, 121 Wash.2d 1026, 854 P.2d 1085 (1993). Pet. for Review at 14-15. In Moses Lake, the court rejected an award of attorney fees in an appeal from an interest arbitration proceeding. Moses Lake, 68 Wash.App. at 748-49, 847 P.2d 16. In holding that attorney fees were unavailable even though the superior court order enforcing the arbitrator's award resulted in a salary increase for union members, the court focused on the purpose of RCW 41.56.450 in providing for binding arbitration and superior court review. Id. It found that the salary increase was only "corollary, rather than central, to the Legislature's purpose of providing judicial review of the arbitration process." Id. at 748, 847 P.2d 16.
Because Moses Lake involved an appeal from an interest arbitration award pursuant to RCW 41.56.450, we find it distinguishable. Moses Lake, 68 Wash.App. at 744-45, 847 P.2d 16. Interest arbitration and grievance arbitration serve different purposes. Interest arbitration "is used to determine the terms of the contract between the parties when they cannot negotiate an agreement and results in a new agreement. Grievance arbitration is used to resolve labor disputes through the interpretation and application of an already existing collective bargaining agreement." City of Bellevue v. Int'l Ass'n of Fire Fighters, Local 1604, 119 Wash.2d 373, 376, 831 P.2d 738 (1992). Thus, when parties enter into interest arbitration, neither party is yet entitled to any specific right or remedy.
However, in a grievance arbitration, an employee is seeking to vindicate an existing right. The purpose of RCW 49.48.030, therefore, is served by allowing attorney fees in grievance arbitration; whereas, it would not be served by allowing them in interest arbitration. Contrary to the City's position, the fact that the employees were awarded back pay by the arbitrator in Moses Lake is not dispositive on this issue because the employees were not entitled to that award until the arbitrator had determined the terms of the collective bargaining agreement. The arbitrator could just have easily determined that the salary increase was not warranted.
Furthermore, the authorization of binding arbitration under RCW 41.56.450 serves a specific purpose unrelated to vindicating the rights of workers to receive "wages or salary owed." In enacting RCW 41.56.400 and 41.56.450, the Legislature intended to avoid strikes by uniformed personnel. See RCW 41.56.430. Thus, any additional wages received by the union members in Moses Lake were merely incidental to the legislative purpose of avoiding strikes by providing for arbitration.

*1274 Public Policy
The City and the amici curiae[13] assert several policy reasons to support their position that RCW 49.48.030 should not allow an award of attorney fees for labor arbitration proceedings when wages or salary owed are recovered. We find them unpersuasive.

Effect on Traditional Labor Arbitration Rules
The City asserts that the Court of Appeals decision disturbs the "settled rule in labor arbitration" that each side is responsible for its own attorney fees in arbitration proceedings. Pet. Suppl. Br. at 16 (citing 2 TIM BORNSTEIN, LABOR AND EMPLOYMENT ARBITRATION § 39.03[2][b], at 39-26 (1999)). The City specifically argues that Washington has rejected fee shifting in the labor arbitration context, citing the Public Employment Relations Commission (PERC) rules and cases involving unfair labor practices. Pet. for Review at 17-18. Under RCW 41.56.125, unions and public employers may agree to refer disputes to PERC for arbitration. WAC 391-65-150 provides that in such proceedings, each side shall pay the expenses of presenting its case. In the unfair labor practices context, we have held that "RCW 41.56.160 is broad enough to permit a remedial order containing an award of litigation expenses," but that such awards "should be reserved for cases in which a defense to the unfair labor practice charge can be characterized as frivolous or meritless." State v. Bd. of Trs. of Cent. Wash. Univ., 93 Wash.2d 60, 69, 605 P.2d 1252 (1980).
The general rule in labor arbitration is that each side shall pay its own attorney fees unless there is "specific statutory or contractual authorization" to the contrary. FAIRWEATHER'S PRACTICE AND PROCEDURE IN LABOR ARBITRATION 497 (Ray J. Schoonhoven ed., 4th ed. 1999). The City cites no persuasive reason why the general rule cannot be abrogated by state law,[14] but instead argues that the legislative intent in RCW 49.48.030 is insufficient to override the common practice. By enacting RCW 49.48.030, the Legislature made a clear policy decision that attorney fees should be awarded to encourage the payment of wages owed. Because of the nature of labor relations, arbitration is the primary method for employees to recover wages or salary owed. Thus, interpreting the statute to include arbitration proceedings would be consistent with this purpose.
Furthermore, we find that the PERC rules and this court's holding in an unfair labor practices case are not dispositive on the issue of attorney fees for arbitration proceedings under RCW 49.48.030 because neither address a situation in which attorney fees are authorized by statute.[15]See Bd. of Trs., 93 Wash.2d at 67, 605 P.2d 1252; WAC 391-65-150.
Employers' rights to negotiate contracts with unions are not affected by this conclusion. An employer could still avoid an award of attorney fees by specifically providing in the collective bargaining agreement that each side pay their own fees and costs. See Hitter, 66 Wash.App. at 397-99, 832 P.2d 130 (holding that plaintiff had waived right to attorney fees because his collective bargaining agreement specifically provided that each side would pay its own fees and costs). Employers could also limit their exposure to attorney fees by waiting to impose wage reductions in disciplinary actions until after the disciplinary action has been tested under *1275 a collective bargaining agreement's "just cause" provision. Therefore, even if an arbitrator found a disciplinary action improper, because the employee has not yet lost wages, attorney fees will not be available.
The amici also argue that allowing an award of attorney fees in labor arbitration proceedings when an employee receives wages or salary owed would result in a windfall to unions. Br. of Amici Curiae at 5. The amici assert that the employers, relying on "common understanding of labor law," negotiated collective bargaining agreements with unions assuming that each side would bear its own expenses. Id. Because these costs have already been calculated by each side, the amici argue, the Court of Appeals decision creates "economic hardship on employers and a windfall to unions." Id.
Our holding will not create a "windfall" to unions. First, as Local 46 asserts, because Hitter was decided in 1992, employers have been on notice that they may have to pay attorney fees in arbitration proceedings. Second, because grievance arbitration can be expensive, unions are not always able to bring grievance proceedings even in meritorious cases. See Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 742, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (because union's objective is to maximize overall compensation to members, "a union balancing individual and collective interests might validly permit some employees' statutorily granted wage and hour benefits to be sacrificed if an alternative expenditure of resources would result in increased benefits for workers" generally); Lindsey v. Mun. of Metro. Seattle, 49 Wash.App. 145, 149, 741 P.2d 575 (1987). One of the primary purposes of remedial statutes like RCW 49.48.030 is to allow employees to pursue claims even though the amount of recovery may be small. C.f., Brandt v. Impero, 1 Wash.App. 678, 682, 463 P.2d 197 (1969) (purpose of RCW 49.52.070 in granting attorney fees was to prevent wrongful withholding of wages even if amount withheld is small). Thus, the purpose of RCW 49.48.030 is effectuated by allowing unions to pursue wage claims that they may not have otherwise been able to pursue.

Effect on Washington's Policy Favoring Arbitration
The City asserts that interpreting RCW 49.48.030 to include arbitration proceedings would undermine Washington's public policy in favor of arbitration. Pet. for Review at 18. It argues that this conclusion would create an artificial incentive for unions to retain counsel in order to obtain attorney fees and that the cost of the award would dwarf the actual back pay at stake.[16]Id. It further argues that because fee disputes would be decided by courts and not arbitrators, every successful arbitration award could spawn a litigation over attorney fees. Id. at 19.
Washington public policy favors arbitration. See Davidson v. Hensen, 135 Wash.2d 112, 118, 954 P.2d 1327 (1998); Boyd, 127 Wash.2d at 262, 897 P.2d 1239. However, we do not believe that this policy would be affected by allowing attorney fees in arbitration proceedings where wages are awarded. As the Court of Appeals stated, to the extent a second action in superior court is necessary to award attorney fees, there already exists a "well-developed body of case law" dealing with attorney fees, which would facilitate courts' handling of these cases. Fire Fighters, 101 Wash.App. at 750, 6 P.3d 50. Furthermore, by not allowing awards of attorney fees for labor arbitration proceedings, unions would have less incentive to seek binding arbitration in cases where wrongfully withheld wages or salary are sought.[17]

*1276 CONCLUSION
We hold that RCW 49.48.030 allows an award of attorney fees to a labor union that obtains a favorable wage recovery on behalf of its member employees in a grievance arbitration proceeding. Pursuant to RCW 49.48.030, we also award Local 46 its attorney fees for this proceeding.
We therefore affirm the Court of Appeals decision and remand the case to the trial court for calculation of Local 46's attorney fees for the arbitration proceeding and all superior and appellate court proceedings in this matter.
SMITH, IRELAND, CHAMBERS, and OWENS, JJ., concur.
ALEXANDER, C.J. (dissenting).
I fully agree with Justice Johnson that an arbitration proceeding conducted under a collective bargaining agreement is not an "action... for wages or salary" pursuant to RCW 49.48.030. I write separately simply to add an additional reason for not awarding attorney's feesthat the arbitration award is not a "judgment" for wages or salary. I say that because only a court has the authority to enter a judgment. See Larsen v. Farmers Ins. Co., 80 Wash.App. 259, 265-66, 909 P.2d 935 (1996) (quoting Channel v. Mills, 61 Wash.App. 295, 299-300, 810 P.2d 67 (1991)). A judgment is a court's "final determination of the rights of the parties in the action and includes any decree and order from which an appeal lies ... [which is] in writing and signed by the judge." CR 54(a)(1). Here, the International Association of Firefighters, Local 46, obtained an arbitration award for wages on behalf of two of its members. While such an award is legally significant, it is not a judgment for wages or salary. Consequently, it does not fall under RCW 49.48.030, the statute on which the union relies for an award of fees. I would, therefore, affirm the trial court. Because the majority does otherwise, I dissent.
SANDERS, J., concurs.
JOHNSON, J. (dissenting).
The majority improperly interprets a statute that has a limited and specific application and extends it to an arbitration proceeding conducted under a collective bargaining agreement. Neither the language of the statute nor our cases support the majority's interpretation.
The language of RCW 49.48.030 is plain:
In any action in which any person is successful in recovering judgment for wages or salary owed to him [or her], reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer....
This statute does not need the tortured reading given to it by the majority.[1] Simply stated, a person is entitled to reasonable attorney fees in an action in which he or she successfully recovers a judgment for wages or salary owed. But here, the lawsuit spawning this appeal was filed after the employees prevailed in arbitration and when no wages remained owing. The majority ignores this fact and goes on to rewrite the statute by expansively interpreting "action" to include arbitration proceedings. Our case law does not support the majority's position.[2]
To fall within the gamut of RCW 49.48.030, a person must successfully bring an action to recover a judgment for wages or salary due. Though we have not decided whether an "action" under RCW 49.48.030 includes arbitration proceedings, this issue is not new to us. The majority relies on a dictionary definition of "action" as, in part, a "judicial proceeding." *1277 Majority at 1270-71. It concludes from this that because we have characterized, in dicta, arbitration as both judicial and nonjudicial, "nothing in the `plain language' of `action' prevents us from interpreting it to include arbitration proceedings." Majority at 1270 (relying on Boyd v. Davis, 127 Wash.2d 256, 263, 897 P.2d 1239 (1995); Tombs v. N.W. Airlines, Inc., 83 Wash.2d 157, 161-62, 516 P.2d 1028 (1973); N. State Constr. Co. v. Banchero, 63 Wash.2d 245, 249, 386 P.2d 625 (1963)). Even accepting the majority's assumption that "action" is synonymous with "judicial," the very cases upon which the majority relies are clear: arbitration is not the exercise of judicial authority. We have held:
[W]hen dealing with the actual nature of arbitration itself we have not considered the function judicial. Rather, it has been deemed a substitute for judicial action. It is a procedure designed to reach settlement of controversies, by extrajudicial means, before they reach a point at which one must resort to judicial action. In short, the very purpose of arbitration is to avoid courts and the formalities, the delay, the expense and the vexation of ordinary litigation.

Grays Harbor County v. Williamson, 96 Wash.2d 147, 153, 634 P.2d 296 (1981) (citation omitted) (citing Thorgaard Plumbing & Heating Co. v. County of King, 71 Wash.2d 126, 131-32, 426 P.2d 828 (1967)).
If that were not clear enough, in Thorgaard, upon which Williamson relied, we said: "[a]n action is a prosecution in a court for the enforcement or protection of private rights and the redress of private wrongs.... An arbitration proceeding is not had in a court of justice.... The very purpose of arbitration is to avoid the courts insofar as the resolution of the dispute is concerned.... [T]here is a difference between an action and an arbitration proceeding; that arbitration is a substitute for, rather than a mere prelude to, litigation." Thorgaard, 71 Wash.2d at 130-32, 426 P.2d 828 (footnotes and citations omitted). The majority refuses to follow Thorgaard because that case construed chapter 7.04 RCW and this case concerns chapter 49.48 RCW. That position does not make sense in light of the majority's total reliance on cases construing chapter 7.04 RCW. Majority at 1270 (citing Boyd, 127 Wash.2d at 263, 897 P.2d 1239; Tombs, 83 Wash.2d at 161-62, 516 P.2d 1028; Banchero, 63 Wash.2d at 249, 386 P.2d 625).[3]
If the majority dismisses Thorgaard because it construed chapter 7.04 RCW, it must also dismiss Boyd, Tombs and Banchero since each of them also construed chapter 7.04 RCW. The majority dismisses Thorgaard and misrepresents Boyd, Tombs, and Banchero because the principles discussed therein do not depend on what chapter of the legislative title is at issue. Rather, these cases focus on the fundamental distinction we have always drawn between arbitration and judicial proceedings. In understanding the words of the statute, I would follow these clear principles and draw the same distinction we have always drawn between arbitration and an "action."
RCW 49.48.030, by its terms, applies when a lawsuit is brought and the plaintiff successfully recovers judgment for wages or salary owed. It does not apply to arbitration. I would reverse the Court of Appeals, hold the statute does not apply to this case, and hold the union cannot recover attorney fees.
MADSEN, J., concurs.
NOTES
[1] Under article 6 of the CBA, only Local 46 may bring a grievance against the City for violations of the CBA. Thus, Local 46 acts in a representative capacity when the underlying grievance involves an employee.
[2] Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett, 101 Wash.App. 743, 6 P.3d 50 (2000).
[3] Id. at 746, 6 P.3d 50.
[4] Id. at 746-47, 6 P.3d 50.
[5] Id. at 747, 6 P.3d 50.
[6] Id.
[7] Id. at 750, 6 P.3d 50.
[8] The City does not challenge the Court of Appeals conclusion that an arbitration order is a judgment. Even if it had, we do not disagree with the Court of Appeals conclusion. See Lehrman v. Prague, 115 Conn. 484, 488, 162 A. 15, 16 (1932) (arbitration award is a judgment); Paola v. Commercial Union Assurance Cos., 461 A.2d 935, 937 (R.I.1983) ("nature and effect of an arbitration judgment is equivalent to a judgment in an action at law"). See also 49 C.J.S. Judgments § 2, at 51, 52 (1997) (defining judgment "as the decision or sentence of the law given by a court or other tribunal as the result of proceedings instituted therein" and "as the final determination of the rights of the parties in an action or proceeding, as those rights and obligations presently exist" (footnotes omitted)).
[9] In a footnote in its brief to the Court of Appeals, the City stated that it "reserves the right to argue that Hitter is not correctly decided, if an appropriate forum for revisiting Hitter were presented in the future." Br. of Resp't (Court of Appeals) at 21 n. 6. First, the City argues that this footnote effectively raised the issue to the Court of Appeals. However, we do not consider this mere reference sufficient to raise the issue below. See Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 203, 11 P.3d 762, 27 P.3d 608 (2000) (court will not consider the issue in absence of adequate argument). Second, the City asserts that under the doctrine of stare decisis it could not have asked the Court of Appeals to overrule itself. Reply Br. of Pet'r at 3. However, this is an inaccurate statement of the law. The Court of Appeals can overrule a previous decision if it is "demonstrably `incorrect or harmful.'" King v. W. United Assurance Co., 100 Wash.App. 556, 561, 997 P.2d 1007 (2000) (overruling Castronuevo v. Gen. Acceptance Corp., 79 Wash.App. 747, 905 P.2d 387 (1995)).
[10] The City also did not raise this argument before nor cite either Hanson v. City of Tacoma, 105 Wash.2d 864, 719 P.2d 104 (1986) or Cohn v. Department of Corrections, 78 Wash.App. 63, 895 P.2d 857 (1995) to the Court of Appeals or the superior court. However, in the interest of judicial economy, we will address the issue.
[11] Because the issue in this case deals exclusively with attorney fees for an arbitration proceeding, we decline at this time to address whether RCW 49.48.030 would apply to other types of administrative or quasijudicial proceedings.
[12] RCW 49.48.020 states, "[a]ny person, firm, or corporation which violates any of the provisions of RCW 49.48.010 through 49.48.030 and 49.48.060 shall be guilty of a misdemeanor."
[13] The amici brief is filed on behalf of the Association of Washington Cities, the Seattle Police Department and Seattle City Light, Pierce County, the City of Spokane, Clark County, the City of Lynnwood, and the City of Olympia. Br. of Amici Curiae at 1.
[14] The City cites Roy Allen Slurry Seal v. Laborers Int'l Union, 241 F.3d 1142 (9th Cir.2001) as supporting its position that the common law practice cannot be abrogated by state law. See Pet. for Review at 16. However, Slurry Seal is distinguishable because it specifically addressed whether federal labor law preempted a state law that provided for attorney fees. Slurry Seal, 241 F.3d at 1144. Local 46 represents local government employees; therefore, the CBA is governed by state law. Furthermore, the City admitted at oral argument that the common law rule could be abrogated by statute.
[15] As Local 46 asserts, PERC's grievance arbitration rules are generic for all grievance arbitration proceedings, regardless of whether they involve the recovery of wages; thus, they do not purport to override applicable statutes. Br. of Appellant (Court of Appeals) at 6 n. 2.
[16] One survey indicated that attorneys were used in labor arbitration proceedings 73 percent of the time by employers and 53 percent of the time by unions. See Schoonhoven, supra, at 208 n. 63.
[17] The amici also argue that the Court of Appeals decision will "likely have an adverse affect [sic] on the severity of discipline which public employers are willing to impose." Br. of Amici Curiae at 9. Because this argument was not raised by the City either before the Court of Appeals or on petition for review here, we need not consider it. See Noble Manor Co. v. Pierce County, 133 Wash.2d 269, 272 n. 1, 943 P.2d 1378 (1997) (appellate court will not usually decide issues raised only by amicus).
[1] The majority accuses the City of Everett of ignoring the remedial nature of RCW 49.48.030 "and the rules of construction that Washington courts have attached to it." Majority at 1267. But the majority itself ignores that "[a] statute... clear on its face is not subject to judicial construction." State v. J.M., 144 Wash.2d 472, 480, 28 P.3d 720 (2001). Contrary to the majority's implication, a court cannot legitimately attach a canon of construction to a statute if the statute is not subject to construction. Courts are not free to stake a claim on a statute and declare it subject to judicial construction regardless of its clarity.
[2] This statute has existed in relevant part since 1888. See Laws of 1971, 1st Ex.Sess., ch. 55, § 3. Until today, no opinion of this court has held this statute applicable to arbitration proceedings.
[3] The majority relies upon these cases for the proposition that arbitration may be judicial in nature. Majority at 1268-69. However, Tombs simply analogized arbitration to the judicial process and required the basic due process safeguards that allow courts to treat arbitration results as fair. See Tombs, 83 Wash.2d at 161, 516 P.2d 1028 (arbitrators need not follow rules of law but must afford participants reasonable notice of time and place of hearing and reasonable opportunity to be heard). Neither Boyd nor Banchero remotely suggest arbitration may be "judicial" in nature.